**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

**CASE NO. _____**

MIDWAY LABS USA, LLC, a Florida
limited liability company,

      Plaintiff,

v.

SOUTH SERVICE TRADING S.A., a
Brazilian company, and CODIME COMÉRCIO
E DISTRIBULÇÃO DE MERCADORIAS
LTDA., a Brazilian company,

      Defendants.
_____/

## COMPLAINT

Plaintiff, Midway Labs USA, LLC ("Midway"), by and through its undersigned counsel, sues South Service Trading S.A. and CODIME Comércio e Distribulção de Mercadorias Ltda. (collectively doing business as the "Exicon Group"), and states as follows:

## NATURE OF THE ACTION

1. This is a civil action for breach of an Importation and Distribution Agreement, attached as Exhibit "A" (the "Agreement"), and a subsequent agreement reached by the parties after the Agreement was terminated. Plaintiff seeks monetary relief, including damages, interest, costs, and attorney's fees.

## THE PARTIES

2. Midway is a limited liability company organized and existing under the laws of the State of Florida, with its registered office and principal place of business located at 6401 Congress Avenue, Suite 100, Boca Raton, Florida 33487. Midway's sole member is Midway

Labs Bio, LLC, a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business in Florida.

3. Defendant South Service Trading S.A. is a Brazilian company registered under Brazilian CNPJ Number 93.101.632/0001-22, with its principal place of business located at Avenida Cristóvão Colombo, 1700, conjunto 301, Porto Alegre, Rio Grande do Sul, Brazil.

4. Defendant CODIME Comércio e Distribulção de Mercadorias Ltda. is a Brazilian company registered under Brazilian CNPJ Number 08.283.205/0001-33, with its principal place of business located at Rodovia BR 101, Km 116, Armazém 06, Itajaí, Santa Catarina, Brazil.

5. Both Defendants are fully interconnected, act as agents for one another when convenient for their business operations, and all are effectively conducting business as one entity under the collective name "Exicon Group" (hereinafter, "Exicon").

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorney's fees, and this controversy is between citizens of a State and citizens or subjects of a foreign state.

7. Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

8. Furthermore, this Court has personal jurisdiction over Defendants, and venue is proper in this District and Division, because all of the parties to this action have agreed, in their underlying contract, that the "Agreement and the rights of the Parties therein shall be governed by and construed or enforced in accordance with the laws of the State of Florida," and that "[a]ny actions or proceedings to enforce the terms of [the Import and Distribution] Agreement *shall be* subject to the jurisdiction of the state and federal courts in Miami-Dade County, Florida, and the

Parties hereby waive any defense of inconvenient forum in relation thereto." Ex. "A" at ¶ 28(a) (emphasis added).[1] *See* § 48.193(1)(a)(9), FLA. STAT. (2019).

9. Because Defendants have agreed to the application of Florida law, and to submit actions or proceedings under the Agreement to the jurisdiction of the courts of Miami-Dade County, Florida, the exercise of personal jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## GENERAL ALLEGATIONS

10. On or about May 4, 2018, Midway and Exicon entered into the Agreement. Midway is a highly established producer and seller of its own line of nutritional supplements, manufacturing products in various countries, including the United States, and selling them into various markets, the largest of which is Brazil. As of 2014, Midway's products accounted for approximately 40% of the business-to-business ("B2B") market share for nutritional supplements in Brazil.

11. Exicon is in the business of importing, distributing, and reselling various consumer products, including nutritional supplements, in Brazil.

12. Through the Agreement, Midway appointed Exicon as an importer, distributor and reseller for Midway products in Brazil through select B2B sales channels, and Exicon accepted such appointment and all attending rights and obligations associated with such an appointment.

***Exicon Failed to Meet its Payment Obligations***

13. The Agreement imposed strict payment obligations upon Exicon:

   ***Payment Obligations and Procedures.***

---

[1] Paragraph 28 of the Agreement is mislabeled as paragraph 26.

3

    (a) Imported Midway Products.  Payment by Importer/Distributor for the Imported Midway Products shall be effected in strict compliance with the following procedure:

        (i) As a guarantee of payment for all Imported Midway Products ordered pursuant to an accepted Purchase Order, [Exicon] shall issue a Letter of Credit in accordance with standard procedures governing a Letter of Credit;

        (ii) [Exicon] shall issue a Letter[ ] of Credit pursuant to an accepted Purchase Order immediately upon [its] receipt of a Pro Forma Invoice from Midway Labs or a Third-Party Supplier for the accepted Purchase Order;

        (iii) All Letters of Credit issued pursuant to this Agreement shall have a maximum payment term of 360-days;

        (iv) Considering the ongoing status of this Importation and Distribution Agreement, instead of issuing one Letter of Credit pursuant to each accepted Purchase Order, and that the Letters of Credit shall have a maximum payment term of 360 days, [Exicon] may alternatively issue one or more Standby Letters of Credit for the total amount due and payable by the [Exicon] to Midway Labs as stated in the Parties' Account plus the amount of the accepted Purchase Orders pending shipment (independent of the fact whether the Imported Products were sold to [it] by Midway Labs or a Third-Party Supplier), provided that [Exicon] shall [ ] furnish a draft of all Standby Letters of Credit intended to be used by [Exicon] to Midway Labs for its review and approval prior to issuance, and such Standby Letters of Credit shall be issued to Midway Labs, a Third Party Supplier, or such other third party as may be designated by Midway Labs, in Midway Labs' sole discretion;

        \*   \*   \*

        (vii) In the event the Letter of Credit will expire prior to delivery of all Imported Products pursuant to a Purchase Order, Importer/Distributor shall be obligated to extend the term of such Letter of Credit pursuant to the procedures set forth by Its banking institution[.]

Agreement, Ex. "A" at ¶¶ 6(a)(i)-(iv), (vii).

14. Pursuant to paragraph 13 of the Agreement, Exicon must, among other things, "[c]omply with all payment obligations and procedures set forth in [the] Agreement, including but not limited to the proper issuance of Letters of Credit and Standby Letters of Credit[;]" and "[p]romptly extend the term of any Letter of Credit due to expire prior to completion of delivery of all Midway Products subject to such Letter of Credit." *Id.* at ¶¶ 13(c), (l).

15. Throughout the course of their business relationship, Midway issued multiple invoices to Exicon. Under the agreed-upon terms and the underlying Standby Letter of Credit ("SBLC"), Midway expected to realize cash receipts beginning on August 13, 2019.

16. To date, Exicon has failed to tender *any* payment to Midway for the products duly shipped and invoiced by Midway, including any payments on past due invoices. The two operative SBLCs in relation to the goods Midway has shipped to Exicon, and for which Exicon has failed to tender payment, expired on June 29, 2019 and July 3, 2019 because Exicon allowed them to lapse.

17. Notably, in further violation of the Agreement, Exicon has also failed to issue, as a guarantee of payment, "a Letter of Credit immediately upon its receipt of a Pro Forma Invoice from Midway . . . . for the accepted Purchase Order." *Id.* at ¶¶ 6(a)(i)-(ii). Exicon's continuing failure to pay any of Midway's invoices has caused significant financial harm to Midway.

***Exicon Failed to Assign its Collection Rights to Midway***

18. Under paragraph 10 of the Agreement, if one of Midway's clients defaulted on its payment obligations for product provided by Exicon, Exicon was required to (1) promptly notify Midway of the default, (2) assign its collection rights against Midway's client to Midway *via* a notarized assignment letter and furnish the same to Midway, (3) furnish an endorsed title for the defaulted payment to Midway, and (4) fully and promptly cooperate with Midway in providing

additional documents, as necessary, for Midway to pursue it collection rights. *Id.* at ¶ 10(a), (c)-(e).

19. Midway was only responsible for crediting Exicon for any amount owed by Midway's clients if Exicon successfully completed an assignment of its collection rights to Midway. *Id.* at ¶ 10(f).[2]

20. Exicon repeatedly acknowledged client defaults by sending Midway credit notes, which Midway executed. However, Exicon failed to perform the necessary follow-up by executing notarized assignment letters of its collection rights to Midway, and also failed to meet its accompanying obligations under paragraph 10 of the Agreement. As a result, Exicon is double-counting its receivables while Midway has been unable to collect the outstanding receivables directly from the B2B clients.

***Exicon Failed to Purchase and Maintain a Minimum Stock Level***

21. Pursuant to paragraph 13 of the Agreement, Exicon had material obligations, including, among other things, to:

> (b) Issue irrevocable and irreversible Purchase Orders for Midway Products for the fulfillment of Minimum Stock Level;
>
> …
>
> (d) Maintain a minimum stock inventory of Midway Products in the amounts set forth in the attached "Schedule B" as may be supplemented and amended from time to time during the Term;
>
> (e) Bring all inventory of Midway Products to at least the minimum referenced in 13(d) above within three (3) months in the event [Exicon]'s inventory of Midway Products falls below such minimum stock inventory;

---

[2] Paragraph 10(f) of the Agreement is mislabeled as paragraph 10(d).

22. Exicon also failed to meet these obligations by failing to purchase and maintain a Minimum Stock Level as set forth in Schedule B of the Agreement. As such, Exicon never maintained the minimum stock level required to serve the Brazil market.

23. Given the multiple failures to abide by the material terms of the Agreement, it became apparent to Midway that Exicon was not equipped to exclusively handle the high-volume distribution required under the Agreement. On May 10, 2019, Midway issued a termination notice, pursuant to paragraph 16 of the Agreement.

*Post-Termination Relationship*

24. In light of Exicon's inability to perform under the original Agreement, the parties entered into discussions for the formation of a new, non-exclusive arrangement that would better serve Midway's distribution needs.

25. Midway advised Exicon multiple times, including at an in-person meeting in Anápolis, Brazil June 2019, that it would be creating a subsidiary, Perseus Marketing e Suplementos Eireli ("Perseus"), which would store Midway's products in its own warehouse and distribute directly to some of Midway's clients. The parties agreed that this arrangement would increase flexibility in the supply chain and improve customer service.

26. While Perseus was being organized, to induce Midway into pursuing a new relationship with Exicon, Exicon promised to assist with the sale of approximately R $5.5 million worth of Midway products to a third-party distributor on behalf of Perseus. In exchange, Exicon promised to assign the receivables to Perseus[3] for collection.

---

[3] An assignment of rights from Perseus to Midway will be provided via supplemental filing with the Court.

7

27. In reliance on Exicon's promises, Midway shipped additional products to Exicon in or about August 2019, which Exicon sold to the third-party distributor on behalf of Perseus.

28. However, Exicon failed to fulfill its promise to assign the receivables for the products related to the August 2019 shipment that were sold to the third-party distributor on behalf of Perseus, and has moreover failed to pay Midway for those products.

29. Exicon continues to hold a substantial inventory of Midway products, for which Exicon has paid nothing to Midway.

30. Midway has retained the undersigned law firm to represent it in this matter, and is obliged to pay it a reasonable fee.

31. All conditions precedent for filing this action have been performed, have been waived, or would otherwise be futile to perform.

## COUNT I
## BREACH OF CONTRACT
## (ALL DEFENDANTS)

32. Midway re-alleges paragraphs 1 through 31 above as if fully alleged herein.

33. On or around May 4, 2018, Midway and Exicon entered into a valid, legally enforceable contract in the form of the Agreement. *See* Ex. "A." Pursuant to this contract, Midway appointed Exicon as an importer, distributor and reseller for Midway products in Brazil through select B2B sales channels, and Exicon accepted such appointment and all attending rights and obligations, including but not limited to financial obligations, associated with such an appointment. *See id.* at p. 1 & ¶¶ 6(a)(i)-(iv), (vii); 10(b)-(e); 11; 13(a)-(f), (h), (l).

34. Midway delivered conforming goods to Exicon in accordance with the purchase orders received, and the Agreement, which Exicon accepted. Exicon's acceptance has in turn triggered payment obligations on the part of Exicon, pursuant to, and without limitation, paragraphs 6(a)(i)-(iv), (vii), 13(c), (l) of the Agreement.

8

35. To date, millions remain due and owing by Exicon to Midway, exclusive of interest, costs, attorneys' fees, and incidental and consequential damages.

36. At all relevant times, Exicon never denied receipt of the conforming goods delivered by Midway.

37. Exicon has committed multiple material breaches of the Agreement with Midway, including but not limited to failing to: (a) pay Midway for invoices due; (b) assign its collection rights against Midway's clients to Midway *via* a notarized assignment letter and provide documents to assist Midway in the collection of the same; and (c) cooperate with Midway's sales and marketing team. *See id.* at ¶¶ 6(a)(i)-(iv), (vii), 10(b)-(f); 11; 13(a)-(e), (h), (j) (l).

38. As a result of Exicon's multiple breaches of the Agreement, Midway has suffered damages.

WHEREFORE, Midway demands judgment against all Defendants in a sum to be established at trial, for damages, for reasonable attorneys' fees and costs as provided under paragraph 28(d)[4] of the parties' Agreement, for pre- and post-judgment interest at a rate prescribed under Sections 687.01 and 55.03, Florida Statutes, and for such further relief as the Court deems just and appropriate.

## COUNT II
## PROMISORY ESTOPPEL
## (ALL DEFENDANTS)

39. Midway re-alleges paragraphs 1 through 31 above as if fully alleged herein.

40. After the termination of the Agreement, Exicon promised Midway that it would sell Midway products on behalf of Perseus to a third-party distributor and assign the receivables to Perseus.

---

[4] Paragraph 28(d) of the Agreement is mislabeled as paragraph 26(b).

41. Exicon made this promise with the knowledge and expectation that Midway would rely on it.

42. Midway did, in fact, rely on the promise when it shipped the products in or about August 2019.

43. Exicon has breached its promise to assign the receivables to Perseus, and has failed to pay Midway for the product shipped.

44. Midway has been damaged as a result.

45. Midway can only be made whole, and injustice can only be avoided, by enforcing Exicon's promise.

WHEREFORE, Midway demands judgment against all Defendants in a sum to be established at trial, for damages, costs, pre- and post-judgment interest at a rate prescribed under Sections 687.01 and 55.03, Florida Statutes, for a mandatory injunction, and for such further relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Midway respectfully demands a trial by jury for all matters so triable.

Dated: November 24, 2019

Respectfully submitted,
DIAZ REUS & TARG, LLP
100 Southeast Second Street
3400 Miami Tower
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050

*/s/ Brant C. Hadaway*
Michael Diaz, Jr. (Florida Bar No. 606774)
Attorney E-mail Address: mdiaz@diazreus.com
Brant C. Hadaway (Florida Bar No. 494690)
Attorney E-mail Address: bhadaway@diazreus.com
Roland Potts (Florida Bar No. 87072)
Attorney E-mail Address: rpotts@diazreus.com
*Counsel for Midway Labs USA, LLC*