**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 19-24857-CIV-GOODMAN**
**[CONSENT CASE]**

MIDWAY LABS USA, LLC,

      Plaintiff,

v.

SOUTH SERVICE TRADING, S.A., et al.,

      Defendants.

_____/

*AMENDED*[1] **ORDER GRANTING COUNTERCLAIM DEFENDANT MIDWAY LABS USA, LLC AND THIRD-PARTY DEFENDANTS MIDWAY LABS BIO, LLC AND WILTON B. COLLE'S MOTION TO DISMISS COUNTS III AND IV OF EXICON'S COUNTERCLAIM WITHOUT PREJUDICE**

Counterclaim Defendant Midway Labs USA, LLC ("Midway") and Third-Party Defendants Midway Labs Bio, LLC ("Midway Bio") and Wilton B. Colle ("Colle") (collectively, the "Midway Parties") move to dismiss Counts III and IV of the Counterclaim filed by Defendants and Counterclaim Plaintiffs/Third-Party Plaintiffs South Service Trading S.A. and Codime Comercio e Distribucao de Mercadorias Ltda. (collectively, "Exicon"). [ECF Nos. 18; 22].

In its Counterclaim, Exicon, an importer, distributor and reseller of consumer

---

[1]     The Order is being amended to correct a typo on page 17.

products in Brazil, lays out a detailed narrative alleging that the Midway Parties, producers and sellers of nutritional supplements, engaged in deceptive conduct and breached the Importation and Distribution Agreement (the "Distribution Agreement") between Exicon and Midway Labs USA, LLC. [ECF No. 18]. Specifically, Count III of the Counterclaim alleges that the Midway Parties violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA") [*id.* at pp. 33-35], and Count IV alleges that Midway Bio and Colle, the controlling member and manager of both Midway and Midway Bio, tortiously interfered with the Distribution Agreement [*id.* at pp. 35-37]. The Midway Parties filed a motion to dismiss with prejudice Count III in its entirety and Count IV as it relates to Colle. [ECF No. 22].

For the reasons outlined below, the Court **grants** the Midway Parties' motion to dismiss, albeit **without prejudice**, and gives Exicon the option to file its amended Counterclaim within 14 days of this Order.

I.      **Factual Background**

        a.  **Midway Labs USA, LLC sues Exicon**

        Midway, a producer and seller of its own line of nutritional supplements, manufactures products in various countries, including the United States, and sells them into various markets, the largest of which is Brazil. [ECF No. 1, p. 3]. Exicon is in the business of importing, distributing, and reselling various consumer products, including nutritional supplements, in Brazil. *Id.*

In November 2019, Midway filed its Complaint against Exicon for breach of the Distribution Agreement and a subsequent June 2019 agreement reached by the parties after the Distribution Agreement was terminated. *Id.* at p. 1.

By way of background, Midway and Exicon entered into the Distribution Agreement on May 4, 2018. *Id*. Through the Distribution Agreement, Midway appointed Exicon as an importer, distributor, and reseller of Midway products in Brazil through select sales channels, and Exicon accepted such appointment and all attending rights and obligations associated with its role. *Id.* at p. 3.

In its Complaint, Midway alleges that Exicon breached the Distribution Agreement by: (1) failing to tender any payment to Midway for the products duly shipped and invoiced by Midway, including any payments on past due invoices [*id.* at pp. 3-4]; (2) failing to assign its collection rights to Midway, in violation of the Distribution Agreement [*id.* at pp. 5-6]; (3) violating its obligations by failing to purchase and maintain a Minimum Stock Level as set forth in the Distribution Agreement [*id.* at pp. 6-7]; (4) failing to fulfill its promise to assign the receivables for the products and failing to pay Midway for those products after entering into the 2019 Agreement [*id.* at p. 8]; and (5) continuing to hold a substantial inventory of Midway products, for which Exicon has paid nothing to Midway [*Id.*].

Additionally, Midway claims that Exicon is liable under a promissory estoppel theory. *Id.* at pp. 9-10. Midway alleges that after the termination of the Distribution

Agreement, Exicon promised Midway that it would sell Midway products on behalf of Perseus (Midway's subsidiary created to warehouse Midway's products and distribute them directly to some of Midway's clients) to a third-party distributor and then assign the receivables to Perseus. *Id.* at p. 9. Midway alleges that Exicon made this promise with the knowledge and expectation that Midway would rely on it, and that Midway did, in fact, rely on the promise when it shipped the agreed-upon products in August 2019. *Id.* at p. 10. Nevertheless, Midway contends that Exicon breached its promise to assign the receivables to Perseus and failed to pay Midway for the shipped products. *Id.*

### b. Exicon files a Counterclaim against Midway and two related Midway Parties (Midway Bio and Colle)

In January 2020, Exicon filed its Answer, Affirmative Defenses, and Counterclaim against Midway, and added two related Midway parties, Midway Bio and Colle, for alleged misconduct and repeated breaches of the Distribution Agreement. [ECF No. 18].

In its Counterclaim, Exicon alleges: (1) at Colle's direction, Midway undertook a scheme to unload large quantities of products onto Exicon, knowing it had no ability to sell to customers and to obtain cash and financing [*id.* at p. 8]; (2) Midway baselessly inflated its sales forecasts to induce Exicon to issue large purchase orders, resulting in unsold products piling up in Exicon's inventory [*id.*]; (3) Midway had a history of engaging in similar misconduct with its previous Brazilian distributor [*id.*]; (4) Midway terminated the Distribution Agreement by manufacturing various pretexts for termination, later admitting that the termination was baseless during a May 2019

telephone call between Colle and Exicon's representatives [*id.* at 24]; (5) Midway continued its pattern of breaches and misconduct after the subsequent June 2019 Agreement [*id.* at 27]; (6) Midway and Colle's direction of Perseus, an organization allegedly created by Midway to compete with Exicon, is in bad faith and in direct breach of the Distribution Agreement [*id.* at 29]; and (7) Exicon has not received payment from Midway in connection with expiring products, and Midway has breached its obligation under the Distribution Agreement to reimburse Exicon for the nonpayment of Midway's customers [*id.* at 30].

After Midway filed its Complaint in November 2019, Exicon filed its Answer, Affirmative Defenses, and Counterclaim in January 2020, naming the Midway Parties (Midway Bio and Colle) as counter-defendants. Exicon alleged four counts against the Midway Parties: (I) breach of contract against Midway; (II) breach of the covenant of good faith and fair dealing against Midway; (III) violation of FDUTPA against all three counter-defendants; and (IV) tortious interference with a contract against Midway Bio and Colle. [ECF No. 18].

The Midway Parties filed a Motion to Dismiss Counts III and IV of the Counterclaim. [ECF No. 22]. Exicon filed a response in opposition to the Motion to Dismiss [ECF No. 25] and the Midway Parties filed a reply in support of their Motion to Dismiss [ECF No. 30]. The Court held a Zoom video-hearing on the Midway Parties' Motion to Dismiss. [ECF No. 45].

## II.     Legal Standard

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claimant must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

*Iqbal*, 556 U.S. at 679.

### III.   Analysis

#### a.   Count III: Exicon fails to satisfy the elements of its FDUTPA Counterclaim

In the Motion to Dismiss, the Midway Parties argue that Count III of Exicon's Counterclaim, violation of FDUTPA, fails for four reasons. [ECF No. 22]. First, the Midway Parties contend that Exicon impermissibly groups multiple Counterclaim defendants together without sufficiently differentiating the allegations against each. Second, the Midway Parties argue that Exicon fails to allege a harm to consumers, while alleging that only Exicon, a distributor, was injured. Third, the Midway Parties claim that Exicon alleges only lost profits, which they argue are not actual damages under FDUTPA. Fourth, the Midway Parties contend that Exicon fails to allege any nexus to Florida consumers, as the pleadings show that dealings between the parties took place in Brazil.

Exicon argues that Midway Parties violated FDUTPA by engaging in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1); [ECF Nos. 18; 141]. Exicon alleges that Midway and Colle violated FDUTPA by (1) misrepresenting Midway's portfolio of customers and potential sales of product and  Exicon's potential guaranteed profit from the enterprise; (2) deceptively inducing Exicon to enter into the Distribution Agreement based on false representations about Midway's sales and marketing abilities and its customer portfolio; (3) failing to disclose

that Netshoes was still contractually Midway's exclusive distributor for B2B sales in Brazil at the time the Distribution Agreement was executed; (4) failing to disclose that problems with Netshoes had left Midway indebted to several of its customers; (5) issuing sales forecasts with drastically inflated product numbers; (6) shipping products that were not included in any sales forecasts and were not reasonably believed to be sellable; (7) deceptively inducing Exicon's performance under the June 2019 Agreement; (8) falsely representing to Midway customers that Midway has been assigned the receivables, and seeking direct repayment for customers' defaulted payments; (9) directing Perseus to compete with Exicon; (10) failing to disclose that Perseus was actively competing with Exicon; and (11) wrongfully terminating the Distribution Agreement despite having no legal basis to do so. [ECF No. 18, p. 34].

Moreover, Exicon alleges that "Colle, as the controlling member and manager of both Midway and Midway Bio, is fully aware, has consented to and/or directed these deceptive and unfair trade practices or acts or series of deceptive and unfair trade practices or acts." *Id.*

As for Midway Bio, Exicon alleges that it violated FDUTPA by being "fully aware" of and "consent[ing] to and/or direct[ing] these deceptive and unfair trade practices or acts or series of deceptive and unfair trade practices or acts." *Id.* at p. 35.

Under FDUTPA, a claimant must satisfy three elements to allege a viable claim. A claim under FDUTPA requires: "(1) a deceptive act or unfair trade practice; (2) causation;

and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013); *see also Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010). Failure to meet any of the elements results in dismissal. *See, e.g.*, *Plain Bay Sales, LLC v. Gallaher*, No. 9:18-CV-80581, 2020 WL 202960, at *4 (S.D. Fla. Jan. 14, 2020) ("Because the Prudent Parties fail to plead actual damages in Count V as required by Florida law, the Court DISMISSES Count V of the Third Party Counterclaim as to Haunert.").

### i. *Failure to allege a consumer injury*

The Midway Parties argue that Exicon's FDUTPA claim should be dismissed for failure to allege a consumer injury. [ECF No. 22, pp. 5-6]. In response, Exicon argues that the word "consumer" is construed liberally by Florida courts, and that it has sufficiently pleaded a consumer injury. [ECF No. 25, p. 12].

In 2001, the Florida Legislature amended § 501.211(2), replacing the word "consumer" with "person" in the section that originally provided that "a consumer who [has] suffered a loss as a result of a violation of this part" can bring an action for damages. *See VVIG, Inc. v. Alvarez*, No. 18-23109-CIV, 2019 WL 5063441, at *11-12 (S.D. Fla. Oct. 9, 2019) (citing *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 167-68 (Fla. 4th DCA 2015); Fla. Stat. § 501.211(2)).

The amendment has been interpreted as expanding the class of plaintiffs eligible to bring claims for damages under § 501.211(2) beyond consumers. *Caribbean Cruise Line, Inc.*, 169 So. 3d at 169 (noting that the amendment "indicates that the legislature no longer

intended FDUTPA to apply to only consumers, but to other entities able to prove the remaining elements of the claim as well"); *see also Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 869 n.2 (Fla. 3d DCA 2016).

Although the amendment expanded the class of plaintiffs eligible to bring an action for damages under FDUTPA, the plaintiff must **still allege facts demonstrating a consumer injury** in order to state a claim. *See CEMEX Constr. Materials Fla., LLC v. Armstrong World Industr., Inc.*, No. 3:16-cv-186-J-34JRK, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) (finding that a claimant must "allege facts plausibly suggesting that [the defendant's] actions were likely to cause consumer harm" in order to state a claim under FDUTPA); *Stewart Agency, Inc. v. Arrigo Enterprises, Inc.*, 266 So. 3d 207, 212 (Fla. 4th DCA 2019) (noting that, "[w]hile an entity does not have to be a consumer to bring a FDUTPA claim, it still must prove the elements of the claim, including an injury to a consumer").

Here, Exicon has failed to state a claim under FDUTPA because it has not adequately asserted facts showing consumer injury or detriment. Specifically, Exicon has failed to allege any facts in Count III of its Counterclaim concerning consumer injury or detriment caused by Midway, Midway Bio, and Colle's actions. [ECF No. 18, pp. 33-35]. In addition, none of the allegations in paragraphs 1 through 136 of the Counterclaim, which are incorporated in Count III, plausibly suggest that the Midway Parties' actions led to consumer harm. *See id.* at pp. 7-31.

Under FDUTPA, "[a] 'consumer' is one who has engaged in the purchase of goods or services." *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014) (citations omitted). However, Exicon does not allege in its Counterclaim that it engaged in the purchase of Midway's goods. Rather, Exicon explains that its "responsibilities were to be largely logistical" for the distribution of the products to customers in Brazil to whom Midway was to have already arranged sales. [ECF No. 18, pp. 7, 13]. Exicon does not explain how its "logistical" role in distributing Midway products made it a "consumer" for purposes of FDUTPA or satisfies the consumer injury requirement.

The purpose of FDUTPA is to prevent an unfair practice "that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," while a deceptive act "occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *See Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc*, No. 317CV00686MCRCJK, 2018 WL 7351689, at *6 (N.D. Fla. Sept. 27, 2018) (citing *PNR, Inc. v. Beacon Prop. Mgmt, Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). Without any cogent allegations in its Counterclaim regarding a consumer injury, Exicon is unable to satisfy the requirements of FDUTPA. Accordingly, Exicon's FDUTPA Counterclaim is **dismissed without prejudice**.

Since Exicon did not sufficiently allege a consumer injury, the Court's inquiry could end there; however, the Court will discuss the Midway Parties' other arguments.

### ii.   *Actual damages*

In order to satisfy a claim under FDUTPA, there must be actual damages, as opposed to consequential damages. *See Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1298 (S.D. Fla. 2017); *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017).

Exicon alleges that its damages include past and future profits. [ECF No. 18, ¶ 144]. Exicon states that "[a]s a direct and proximate result of Counterclaim/Third-Party Defendants' deceptive and unfair trade practices or acts or series of deceptive and unfair trade practices or acts, Exicon **has suffered**, and **will continue to suffer**, damages in an amount to be established at trial." *Id.* (emphasis added). Exicon further specified in its Opposition that it is seeking lost profits as its primary form of damages under FDUTPA. [ECF No. 25, p. 14].

Florida law is clear that consequential damages are barred under the statute. *See, e.g.*, *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016) (finding that actual damages do not include "consequential damages"); *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 263 (Fla. 2d DCA 2004) (noting that FDUTPA "permits a consumer to recover only the diminished value of the services received," and not "special, consequential, and incidental damages"); *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 181 (Fla. 3d DCA 2010) (concluding that "[b]ecause the proper measure of 'actual damages' is the

difference in the market value of the jet-boat as delivered and market value as it should have been delivered," the plaintiff "cannot recover damages for the down payment and loan payments, as those are consequential damages"); *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985) (finding that the plaintiffs' claim for costs of repairing termite damage was impermissible under FDUTPA because such costs constituted "special or consequential damages").

Often courts interpret consequential damages to include lost profits. *See, e.g.*, *Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987) ("'Lost profits' are typically considered to be 'consequential damages.'"); *QSGI, Inc. v. IBM Glob. Fin.*, No. 11-80880-CIV, 2012 WL 1150402, at *5 (S.D. Fla. Mar. 14, 2012) ("All that remains is QSGI's repeated claim to consequential damages in the form of "lost profits" and "lost business." [] But consequential damages are not recoverable under FDUTPA."); *Emondson v. 2001 Live, Inc.*, No. 8:16-CV-3243-T-17AEP, 2017 WL 10085029, at *2 (M.D. Fla. July 25, 2017) (internal citation omitted) ("However, it remains well-settled in Florida that consequential damages in the form of lost profits are not recoverable under FDUTPA."); *Plain Bay Sales, LLC v. Gallaher*, No. 9:18-CV-80581, 2020 WL 202960, at *4 (S.D. Fla. Jan. 14, 2020) ("But such alleged damages are lost profits, not actual damages, and consequential damages such as loss profits are not recoverable under FDUTPA."); *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 878 (11th Cir. 2005) ("Lost profits typically fall under the category of consequential damages.").

While Exicon claims that it "will continue to suffer" lost profits [ECF No. 18, ¶ 144], **future** lost profits are consistently considered to be consequential damages that <u>cannot</u> be recovered under FDUTPA. *See, e.g.*, *Glob. Tech LED, LLC v. Hilumz Int'l Corp.*, No. 2:15-CV-553-FTM-29CM, 2016 WL 3059390, at \*3 (M.D. Fla. May 31, 2016) ("For the purpose of recovery under FDUTPA, 'actual damages' do not include consequential damages, precluding recovery of future lost profits."); *BPI Sports, LLC v. Labdoor, Inc.*, No. 15-62212-CIV-BLOOM, 2016 U.S. Dist. LEXIS 23033, at \*1 (S.D. Fla. Feb. 25, 2016) ("However, the FDUTPA claim failed because the manufacturer did not allege actual damages, but instead alleged only consequential damages in the form of lost profits and business.").

Consequently, to the extent that Exicon is claiming entitlement to *future* lost profits, this portion of its claimed damages is not recoverable under FDUTPA.

Nevertheless, courts in the Eleventh Circuit are split on whether *past* lost profits are permissible under FDUTPA. *Sandshaker Lounge & Package Store LLC*, 2018 WL 7351689, at \*6 n.15 (noting split of authority between the courts regarding whether past lost profits are actual damages).

For example, some Florida district courts find that past lost profits are actual damages and may be recovered. *See, e.g.*, *Factory Direct Tires Inc. v. Cooper Tire & Rubber Co.*, Case No. 3:11-cv-255-RV/EMT, 2011 WL 13117118, at \*7 (N.D. Fla. Oct. 24, 2011) (finding that past lost profits, as opposed to future lost profits, constitute actual damages

under FDUTPA); *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1365 (S.D. Fla. 2009) (finding that the plaintiff adequately pled damages under FDUTPA where it alleged that "Defendants' conduct has led to lost profits for Plaintiff").

On the other hand, other district courts within Florida also find that past lost profits constitute consequential damages and may *not* be recovered under FDUTPA. *See, e.g.*, *Casa Dimitri Corp.*, 270 F. Supp. 3d at 1352 (internal citations omitted) ("Lost profits are a quintessential example of consequential damages . . . Additionally, harm in the manner of competitive harm, diverted or lost sales, and harm to the goodwill and reputation are consequential damages."); *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 5640725, at *5 (S.D. Fla. Aug. 3, 2017) (dismissing FDUTPA count where past lost profits were the only alleged damage); *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at *6 (S.D. Fla. May 16, 2016) ("The substantive law of Florida, as it currently stands, leads to the conclusion that lost profits are consequential damages, and, thus, not recoverable under FDUTPA.").

The Florida Supreme Court has not decided the issue of whether past lost profits are an available actual damage or an unavailable consequential damage under FDUTPA. Similarly, the Eleventh Circuit Court of Appeals has not resolved the split either. And the *Sandshaker Lounge* Court, which expressly flagged the issue as one generating a split of authority, opted to not rule on the issue because the Plaintiff there "failed even to allege consumer injury." 2018 WL 7351689, at *6 n.15.

Rather than kick the legal can down the road, the Undersigned has chosen to rule on the issue -- and the ruling is that past profits are not actual damages under FDUTPA. Rather, they are consequential damages and therefore cannot be included in a FDUTPA recovery.

To be sure, there are some nonbinding district court cases which have said that past lost profits are recoverable.  But I do not find those cases convincing.

For example, as noted by the *Diversified* Court, "[t]he *Tracfone* court conducted no analysis of the actual damages issue, and cited no authority for its decision not to dismiss for failure to plead actual damages." 2016 WL 4256916, at *6. The Undersigned agrees with this assessment of *Tracfone*, which merely stated its wholly conclusory statement about lost profits without any discussion whatsoever.

Second, the *Factory Direct* Court did not perform much analysis either, and it hedged its bets by saying that it "would appear" that past lost profits constitute actual damages for FDUTPA purposes. 2011 WL 13117118, at *7. But this type of equivocal language does not generate confidence in the conclusion.

Third, and perhaps most importantly, there is no substantive distinction between past lost profits and future lost profits for purposes of determining whether past lost profits are actual damages. Both past lost profits and future lost profits inherently involve consequential-type damages, which are not authorized under FDUTPA.  The mere fact that a lost profit is a past lost profit because it already occurred does not somehow and

automatically change the *nature* of the damage from consequential to actual.  Instead, a past lost profit is simply a consequential damage which has happened.

To be sure, a past lost profit, unlike a future lost profit, is no longer speculative. But being **speculative** is not what makes a future lost profit unavailable in a FDUTPA claim. The litmus test, the distinction between available FDUTPA damages and unavailable FDUTPA damages, is whether the damage is consequential.  A lost profit damage is no less consequential merely because it is a past profit.

So there is *a* distinction between future lost profits and past lost profits -- but that distinction (i.e., whether future lost profits are speculative, as opposed to the certainty of a past, already-incurred lost profit) is not one which helps determine whether one category of damage is an impermissible consequential damage.

By way of summary, Exicon's FDUTPA claim is dismissed for two reasons, either one of which is independently sufficient to warrant dismissal: (1) it failed to allege consumer injury; and (2) lost profits (both past and future) are not recoverable under FDUTPA. The dismissal is without prejudice, however.  Perhaps Exicon has a factual and legal basis, consistent with its Federal Rule of Civil Procedure 11 obligations, to file an amended FDUTPA claim which will address both of the failings outlined above.

### iii.   *Specific misconduct alleged against Midway USA, Midway Bio, and Colle*

The Midway Parties allege that Count III of Exicon's Counterclaim should be dismissed because "[n]otably absent from these allegations is any reference to what

specific, individual actions were taken by Midway, Midway Bio, or Colle. This fatal ambiguity pervades Count III, rendering it impossible for Midway, Midway Bio, and Colle to know precisely how to respond to the allegations." [ECF No. 22, p. 5].

The Court disagrees. Here, the allegations in the Counterclaim are detailed and clear enough to enable the Midway Parties to understand which allegations apply to which cause of action and counter-defendant. Although the Counterclaim refers to counter-defendants collectively in some instances, it also refers to the individual counter-defendant's specific actions in others. The Court finds it reasonable to infer that where the Midway Parties are referred to collectively, the allegations apply to all three of them, as opposed to Exicon's specific allegations against Midway, Midway Bio, and Colle.

For example, the Counterclaim details allegations against Midway USA: (1) alleged misrepresentations by Midway to induce Exicon to enter into the Distribution Agreement, including the provision of inflated sales figures, false projections concerning profitability, and misrepresentations about the reliability of customers [ECF No. 18, ¶¶ 31-35]; (2) Midway's alleged failure to disclose, at the time of the Distribution Agreement's execution, that NS2.com Internet S.A. was still Midway's exclusive distributor of products in Brazil [*id.* at ¶¶ 70-72]; (3) Midway's alleged issuance of sales forecasts with inflated product numbers [*id.* at ¶¶ 53-61]; (4) Midway's alleged misrepresentations to induce Exicon to enter into the June 2019 Agreement [*id.* at ¶¶ 91-

103]; and (5) Midway's alleged instruction to Perseus to compete with Exicon in violation of the Distribution Agreement's exclusivity provisions [*id.* at ¶¶ 108-16].

The Counterclaim also details specific allegations about Midway Bio: (1) Midway Bio's alleged involvement in directing its subsidiary, Perseus, to compete directly with Exicon [*id.* at ¶¶ 108-11]; and (2) allegations that Midway Bio arranged for shipments of products directly to Perseus for distribution directly to Midway's customers throughout Brazil, in violation of Exicon's exclusive right to do so under the Distribution Agreement [*id.* at. ¶¶ 112-15].

Finally, the Counterclaim details specific allegations about Colle: (1) Colle allegedly engaged in misconduct on behalf of the Midway Parties by misrepresenting Midway's sales and profitability to induce Exicon to enter into the Distribution Agreement [*id.* at ¶¶ 30-35]; (2) Colle sent, on behalf of Midway, a letter to Exicon purporting to terminate the Distribution Agreement [*id.* at ¶¶ 83-89]; (3) Colle made misrepresentations on behalf of Midway to induce Exicon to enter into the June 2019 Agreement [*id.* ¶¶ at 91-103]; (4) Colle oversaw and confirmed the inflated sales forecasts that Midway and Colle did not reasonably believe would be sold [*id.* at ¶ 58]; and (5) Colle established Perseus and directed it to compete with Exicon by arranging for shipments of products directly to Perseus for distribution directly to Midway's customers throughout Brazil, in violation of Exicon's exclusive right to do so under the Distribution Agreement [*id.* at ¶¶ 83-89].

On its own, this argument would not cause the dismissal of Exicon's FDUTPA Counterclaim; however, Exicon's failure to adequately allege a consumer injury and the unavailability of lost profits damages under FDUTPA results in the dismissal of Count III.

### iv.   Connection to Florida

The Midway Parties argue that Count III fails because FDUTPA requires that the alleged unfair conduct or trade practice either takes place in Florida or has a nexus to Florida and "Exicon fails to allege that any of Midway, Midway Bio, or Colle's conduct occurred within the territorial boundaries of Florida." [ECF No. 22, p. 7]. The Court does not find Midway's argument to be a persuasive and finds that Exicon has alleged a sufficient connection to Florida.

First, Midway and Midway Bio are Florida corporations and Colle is a resident of Florida. Second, Exicon alleges that the Midway organization conducted business out of its Boca Raton headquarters from where its members arrange the manufacture and sale of their products. [ECF No. 18, ¶¶ 24-26]. Third, throughout its Counterclaim, Exicon alleges that the fraudulent misconduct by the Midway Parties was conducted from its Florida headquarters. Finally, Midway included a Florida choice of law provision in the Distribution Agreement, which was ultimately executed. It also includes a choice of forum provision whereby the parties agreed to resolve disputes in the courts situated in Miami-Dade County, Florida. *Id.* at ¶ 24.

The Court is not convinced by the Midway Parties' argument, but, as explained above, Count III must be dismissed (albeit without prejudice) for Exicon's inability to satisfy elements of the FDUTPA claim.

### b. Count IV: Exicon fails to satisfy its claim for tortious interference against Colle

Exicon alleges that Midway Bio and Colle tortiously interfered with Midway's performance under the Distribution Agreement with Exicon. [ECF No. 18, p. 35]. Further, Exicon contends that Midway Bio and Colle "were fully aware of the terms of the Distribution Agreement and, in particular, its grant of exclusive importation and distribution rights to Exicon." *Id.* Exicon argues that Midway Bio and Colle "intentionally and unjustifiably interfered with these relationships by, inter alia, directing a Midway Bio's subsidiary, Perseus, to purchase Products from Brazilian manufacturers and fulfill sales directly to customers, in direct competition with Exicon and in breach of its exclusive distribution rights." *Id.*

The Midway Parties argue that Count IV of the Counterclaim should be dismissed against Colle, because, as the managing member of Midway USA, he cannot tortiously interfere with a contract to which Midway USA is a party. [ECF No. 22, pp. 9-10].

In order to maintain a claim for tortious interference with a business relationship under Florida law, a party must prove (1) the existence of a business relationship between the plaintiffs and a third party, (2) the defendants' knowledge of the business relationship, (3) the defendants' intentional and unjustified interference with the business

relationship, and (4) damage to the plaintiffs as a result of the interference. *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004) (emphasis added).

A tortious-interference claim cannot succeed when "the alleged interference is directed at a business relationship to which the defendant is a party." *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007).

The Distribution Agreement is between Midway USA and Exicon. [ECF No. 1-1, Distribution Agreement]. Colle executed the Distribution Agreement on behalf of Midway USA. *Id.* at pp. 1, 14. Colle cannot, as managing member of Midway USA, tortiously interfere with a contract to which Midway USA is a party because he is not a stranger to the business relationship. *See Romika-USA, Inc.*, 514 F. Supp. 2d at 1338 ("[T]he interfering defendant must be a third party, a stranger to the business relationship."); *Bray & Gillespie Mgmt., LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1367-68 (M.D. Fla. 2007) ("Consequently, an agent generally cannot be held liable for tortiously interfering with the contract of its [principal] because the agent is privileged to act in the best interest of the [principal]."); *Special Purpose Accounts Receivable Co-op v. Prime One Co.*, 125 F. Supp. 2d 1093, 1103-04 (S.D. Fla. 2000) (reiterating the well-established rule that "[w]hether the defendant interferes with a contractual or business relationship, that defendant must be a third party or a stranger to the business relationship").

Colle, as the managing member of Midway USA, was privileged to interfere in a contract between Midway USA and Exicon. *See Babson Bros. Co. v. Allison*, 337 So. 2d 848,

850-51 (Fla. 1st DCA 1976) (holding that a controlling stockholder of a corporation is privileged to interfere with a contract between the corporation and a third party).

Consequently, Count IV of the Counterclaim, as it relates to Colle, fails as a matter of law.

## IV.    Conclusion

For the reasons stated above, the Court **grants** the Midway Parties' motion to dismiss; however, Counts III and IV of the Counterclaim are dismissed *without prejudice*. Exicon shall have 14 days to amend Counts III and IV.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on May 14, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record

23